UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ORGANIZATION FOR RARE DISORDERS,<br>    55 Kenosia Avenue<br>    Danbury, CT 06810<br><br>*Plaintiff,*<br><br>–v–<br><br>CHRISTI A. GRIMM, in her official capacity as the Principal Deputy Inspector General of the Department of Health and Human Services,<br>    330 Independence Avenue, SW<br>    Washington, DC 20201,<br><br>XAVIER BECERRA, in his official capacity as the Secretary of Health and Human Services,<br>    200 Independence Avenue, SW<br>    Washington, DC 20201,<br><br>*Defendants.* | **COMPLAINT**<br><br><br>**Case No.** _____ |

National Organization for Rare Disorders ("NORD") brings this action against Defendants Christi A. Grimm, in her official capacity as Principal Deputy Inspector General in the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS"), and Xavier Becerra, in his official capacity as the Secretary of HHS. NORD alleges as follows:

**NATURE OF ACTION**

1. NORD is a charitable, patient advocacy organization dedicated to individuals with rare diseases and the organizations that serve them. NORD brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, to challenge the refusal by OIG to issue an advisory opinion in response to NORD's request, which OIG was statutorily required to do under 42 U.S.C. § 1320a-7d(b).

2. In 42 U.S.C. § 1320-7d(b), Congress directed that "[t]he Secretary, in consultation with the Attorney General, *shall* issue written advisory opinions" in response to requests on certain topics, § 1320a-7d(b)(1) (emphasis added); that "[t]he Secretary *shall* issue advisory opinions as to [matters including] whether *any activity* or proposed activity constitutes grounds for the imposition of a sanction under [the anti-kickback statute]," § 1320a-7d(b)(2)(E) (emphasis added); and that "the Secretary *shall* be required to issue to a party requesting an advisory opinion by not later than 60 days after the request is received," § 1320a-7d(b)(5)(B)(i) (emphasis added).

3. Over the course of 10 years, NORD has submitted three requests to OIG for an advisory opinion confirming the legality of NORD's Patient Assistance Programs ("PAPs").

4. In response to each of NORD's three requests, OIG has refused to issue an advisory opinion. Each time, OIG has issued a denial letter stating that, under an OIG regulation, it is precluded from issuing an advisory opinion when "[t]he same, or substantially the same, course of action is under investigation, or is or has been the subject of a proceeding involving the Department of Health and Human Services or another governmental agency." *See* 42 C.F.R. § 1008.15(c)(2).

5. In refusing to issue an advisory opinion to NORD based on a regulatory exception for matters "under investigation," OIG violated its mandatory statutory duty to issue advisory opinions on certain topics when requested to do so. OIG's statutory duty contains no exception for matters that are under investigation, although it does contain other exceptions for certain types of requests that do not apply to NORD. The regulatory exception for matters "under investigation" is invalid.

6. After sending its denial letter in response to NORD's most recent request, OIG advised NORD's counsel by phone that OIG is not aware of NORD itself being under investigation. OIG stated that its refusal to issue an advisory opinion was based on ongoing

investigations of *other entities*, which, in OIG's view, qualify as investigations of "the same, or substantially the same, course of action" that is the subject of NORD's request.

7. OIG's refusal to issue an advisory opinion to NORD is a violation of its mandatory duty to issue advisory opinions under section 1320a-7d(b) and is arbitrary and capricious in violation of the Administrative Procedure Act.

8. NORD files this lawsuit to compel OIG to issue an advisory opinion in response to NORD's most recent request. 5 U.S.C. § 706(1), (2).

## PARTIES

9. Plaintiff NORD is a 501(c)(3) patient advocacy organization headquartered in Connecticut and incorporated in New York. NORD's mission is to assist individuals with rare diseases and the organizations that serve them. NORD was founded in 1983 by rare disease patients and families struggling to obtain access to treatments, and that same year NORD's advocacy led to the enactment of the Orphan Drug Act.[1] Today, NORD is a federation of approximately 330 independent, disease-specific patient advocacy organizations; 70% have fewer than five full-time employees and 80% fund research on orphan diseases. NORD serves the rare disease patient population in many ways, including through advocacy, promoting research, supplying information to patients and caregivers, and assisting patients in obtaining critical medical care. NORD currently operates 32 PAPs that serve approximately 8,000-10,000 patients each year.

10. Defendant Christi A. Grimm is the Principal Deputy Inspector General and since January 2020 has been performing the duties of the Inspector General. Her office is located at 330

---

[1] *See* John Swann, U.S. Food & Drug Admin., *The Story Behind the Orphan Drug Act* (Feb. 23, 2018) (describing "the grass roots efforts of patients and advocates," who "formed a coalition in the early 1980s, which evolved into the National Organization for Rare Disorders (NORD), and which led in 1983, to the enactment of the Orphan Drug Act"), https://www. fda.gov/industry/orphan-products-development-events/story-behind-orphan-drug-act.

Independence Avenue, SW, Washington, DC 20201. OIG is responsible for issuing advisory opinions in accordance with HHS's statutory obligations. *See* 42 C.F.R. § 1008.1(a).

11. Defendant Xavier Becerra ("the Secretary") is the Secretary of HHS and maintains offices at 200 Independence Avenue, SW, Washington, D.C. 20201. In that capacity, he is responsible for the conduct and policies of HHS, including the conduct and policies of OIG. HHS is statutorily obligated to issue advisory opinions under 42 U.S.C. § 1320a-7d(b) and has delegated this authority to OIG.

## JURISDICTION AND VENUE

12. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701–06.

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

14. This judicial district is an appropriate venue pursuant to 28 U.S.C. § 1391(e), in that Defendants are officers of agencies of the United States acting in their official capacities, and a substantial part of the events or omissions giving rise to NORD's claims arose in this district.

## STATUTORY AND REGULATORY BACKGROUND

### A. Congress Required OIG to Issue Advisory Opinions Regarding Certain Healthcare Fraud Statutes Upon Request

15. As part of the Health Insurance Portability and Accountability Act of 1996, Congress enacted statutory provisions requiring OIG to provide additional industry guidance regarding the application of certain healthcare fraud laws, including through advisory opinions. *See* Pub L. No. 104-191, Title II, § 205 (Aug. 21, 1996), *codified at* 42 U.S.C. § 1320a-7d.

16. Congress required OIG to issue advisory opinions because it was concerned that the expansive language and severe penalties of the federal healthcare fraud laws—especially the anti-kickback statute, 42 U.S.C. § 1320a-7b(b)—were discouraging healthcare entities from

4

entering into productive healthcare arrangements that Congress never intended to be prohibited by law.[2]

17. As OIG noted when describing the genesis of its advisory opinion procedures, "[s]ince the [anti-kickback] statute on its face is so broad, concern has been expressed for many years that some relatively innocuous commercial arrangements are technically covered by the statute and are, therefore, subject to criminal prosecution." OIG, Interim Final Rule, 62 Fed. Reg. 7350, 7350 (Feb. 19, 1997).

18. To address these concerns, Congress directed OIG to issue advisory opinions, upon request, addressing whether the requestor's current or proposed activity violates certain healthcare fraud and abuse laws. Congress identified certain subject areas as to which OIG "shall issue advisory opinions," including "[w]hat constitutes prohibited remuneration within the meaning of [the anti-kickback statute]," 42 U.S.C. § 1320a-7d(b)(2)(A), and "[w]hether any activity or proposed activity constitutes grounds for the imposition of a sanction under [various healthcare fraud and abuse statutes, including the anti-kickback statute]." § 1320a-7d(b)(2)(E). Congress also identified certain matters that are "not subject to advisory opinions." § 1320a-7d(b)(3).

19. Congress used strong, mandatory language in requiring OIG to issue advisory opinions in response to requests relating to the covered subject areas. Congress directed that "[t]he Secretary, in consultation with the Attorney General, *shall* issue written advisory opinions," § 1320a-7d(b)(1) (emphasis added); that "[t]he Secretary *shall* issue advisory opinions as to" the enumerated subject areas, including "whether *any activity* or proposed activity constitutes grounds

---

[2] *See* House Report 104-496 at 84–85 *Explanation of the Bill; Advisory Opinions; Reasons for change* (Mar. 25, 1996) ("Providers want to comply with the fraud and abuse statute, but many are unsure of how the statute affects them. These providers should be able to receive guidance from the government regarding financial arrangements. Little or no guidance is currently provided because there are no regulations and only insufficient safe harbors. Without this ability, a chilling effect is placed on legitimate arrangements . . . .").

for the imposition of a sanction under [various fraud and abuse statutes including the anti-kickback statute]," § 1320a-7d(b)(2)(E) (emphasis added); and that under regulations to be promulgated by OIG, "the Secretary *shall* be required to issue to a party requesting an advisory opinion by not later than 60 days after the request is received," § 1320a-7(d)(5)(B)(i) (emphasis added).

## B. OIG Unlawfully Attempted to Narrow its Statutory Obligation to Issue Advisory Opinions by Exempting Activity "Under Investigation" by Any Government Agency

20. On February 19, 1997, via an interim final rule, OIG promulgated regulations governing the issuance of advisory opinions. OIG, Interim Final Rule, 62 Fed. Reg. 7350 (Feb. 19, 1997). On July 16, 1998, OIG issued a final rule that left the regulations in place with relatively minor changes. OIG, Final Rule, 63 Fed. Reg. (July 16, 1998). The regulations are codified at 42 C.F.R. part 1008.

21. OIG's regulations categorically provide that OIG will not issue advisory opinions regarding activity that is under current investigation by any government agency: "Advisory opinion request[s] will not be accepted, and/or opinions will not be issued when the same, or substantially the same, course of action is under investigation, or is or has been the subject of a proceeding involving [HHS] or another governmental agency." 42 C.F.R. § 1008.15.

22. OIG's regulatory exclusion of matters "under investigation" is inconsistent with the plain language of the statute, which directs that OIG must issue advisory opinions regarding certain subject areas when requested to do so. The statute, in a section titled "Matters Subject to Advisory Opinions," provides that OIG "*shall issue*" a requested advisory opinion as to any of several enumerated subject areas, including "whether any activity" is grounds for imposition of sanctions under various health care fraud statutes. 42 U.S.C. § 1320a-7d(b)(2)(E) (emphasis added). In contrast, OIG regulations provide that OIG "*will consider*" requests for advisory opinions regarding those same subject areas, but only subject to the categorical regulatory exclusion that

applies when "[t]he same, or substantially the same, course of action is under investigation." *Id.* § 1008.15(a), (c)(2) (emphasis added).

### PATIENT ASSISTANCE PROGRAMS: GUIDANCE AND INVESTIGATIONS

23. OIG has periodically issued guidance—most notably two Special Advisory Bulletins in 2005 and 2014—regarding independent charity Patient Assistance Programs ("PAPs"), which are programs by which charitable organizations assist financially needy patients with their insurance cost-sharing obligations. *See* OIG, *Special Advisory Bulletin on Patient Assistance Programs for Medicare Part D Enrollees*, 70 Fed. Reg. 70,623 (Nov. 22, 2005) ("2005 Bulletin"); OIG, *Supplemental Special Advisory Bulletin: Independent Charity Patient Assistance Programs*, 79 Fed. Reg. 31,120 (May 30, 2014) ("2014 Bulletin").

24. OIG has opined that charitable PAPs can, under some circumstances, present a risk of violating the anti-kickback statute given that many charitable PAPs receive donations from pharmaceutical manufacturers. *See, e.g.*, 2014 Bulletin, 79 Fed. Reg. at 31,120. However, OIG has explained that with appropriate safeguards in place, "cost-sharing subsidies provided by *bona fide*, independent charities unaffiliated with pharmaceutical manufacturers should not raise anti-kickback concerns, even if the charities receive manufacturer contributions." 2005 Bulletin, 70 Fed. Reg. at 70,624. In both the 2005 and 2014 Bulletins, OIG described precautions that independent charity PAPs can take to avoid anti-kickback concerns, including safeguarding against donor control and ensuring that donors are not given information that would enable them to correlate their contributions to a PAP with the number of subsidized prescriptions for their products. *See* 2005 Bulletin, 70 Fed. Reg. at 70,626–27; 2014 Bulletin, 79 Fed. Reg. at 31,121–23. OIG has issued several advisory opinions at the request of independent charity PAPs in which it opined that, in light of precautions taken by the requestor, the PAP did not present grounds for the imposition of sanctions by OIG. *See,*

*e.g.*, OIG Advisory Opinion No. 15-16 (Dec. 28, 2015); OIG Advisory Opinion No. 15-17 (Dec. 28, 2015).[3]

25. NORD, among the many services that it provides for the rare disease patient population, offers PAPs that assist financially needy patients with, among other things, insurance costs associated with therapies that their healthcare professionals have prescribed for treatment of their rare disease. NORD first established PAPs in 1987 to help patients suffering from rare disorders obtain access to critical medical treatments and services that they could not otherwise afford. NORD establishes each of its PAPs using a "disease fund" model to assist patients suffering from a specific rare disease. NORD currently administers 32 disease state PAPs that collectively serve approximately 8,000-10,000 patients each year.

26. NORD has made conscientious efforts to implement the safeguards that OIG has identified to ensure that its PAPs do not raise concerns under the anti-kickback statute or other relevant healthcare fraud and abuse laws.

27. For several years, the U.S. Attorney's Office for the District of Massachusetts has been investigating possible violations of the anti-kickback statute by independent charity PAPs and the pharmaceutical companies that contribute to them. The investigation has resulted in several public settlement agreements with both non-profit organizations and pharmaceutical companies.[4]

28. In connection with the U.S. Attorney's Office investigation, NORD received three document subpoenas in 2016 and 2017 and made several productions of responsive documents.

---

[3] All OIG advisory opinions are publicly available on OIG's website. *See* OIG, *All Advisory Opinions* (last visited Sept. 9, 2021), https://oig.hhs.gov/compliance/advisory-opinions/browse/.

[4] *See, e.g.*, U.S. Dep't of Justice, *Patient Services, Inc. Agrees to Pay $3 Million for Allegedly Serving as a Conduit for Pharmaceutical Companies to Illegally Pay Patient Copayments* (Jan. 21, 2020), https://www.justice.gov/opa/pr/patient-services-inc-agrees-pay-3-million-allegedly-serving-conduit-pharmaceutical-companies; U.S. Dep't of Justice, *Pfizer Agrees to Pay $23.85 Million to Resolve Allegations that it Paid Kickbacks Through a Co-Pay Assistance Foundation* (May 24, 2018), https://www.justice.gov/usao-ma/pr/pfizer-agrees-pay-2385-million-resolve-allegations-it-paid-kickbacks-through-co-pay.

NORD has periodically been in touch with the U.S. Attorney's Office since that time and has occasionally provided documents in response to specific follow-up requests.

29.  NORD has never been charged with any misconduct relating to its PAPs. In 2021, the Department of Justice attorney in charge of the investigation advised NORD's counsel that he is unaware of any current or anticipated future investigative activity pertaining to NORD.

### OIG'S CONTINUED REFUSAL TO ISSUE AN ADVISORY OPINION REGARDING NORD'S PAPS

30.  Between 2011 and 2021, NORD made three separate requests to OIG for an advisory opinion regarding whether NORD's PAPs complied with the anti-kickback statute and other relevant healthcare fraud laws. Each time, OIG has refused to issue an advisory opinion to NORD. In all three denial letters, OIG relied on the regulation providing that OIG will not issue advisory opinions when "[t]he same, or substantially the same, course of action is under investigation or has been the subject of a proceeding involving the Department of Health and Human Services or another governmental agency." 42 C.F.R. § 1008.15(c)(2).

31.  On June 21, 2011, NORD submitted its first request for an OIG advisory opinion confirming the legality of its PAPs.[5] OIG initially corresponded with NORD about the substance of the request, asking for additional information and materials to aid in its consideration of the request.

32.  However, on August 20, 2012, OIG sent NORD a letter stating that, "upon further review, we are not able to issue an advisory opinion in the above-named matter because 'the same, or substantially the same, course of action is under investigation, or is or has been the subject of a

---

[5] NORD had previously submitted a request for an advisory opinion related to both its PAPs and certain of its other programs. At OIG's suggestion, NORD withdrew the combined request and submitted two separate requests—one relating to PAPs, and one relating to the other programs. NORD submitted these separate requests on June 21, 2011.

proceeding involving [HHS] or another government agency.' 42 C.F.R. § 1008.15(c)(2)." The letter did not identify the investigation or disclose whether NORD itself was being investigated.

33. On October 9, 2018, NORD submitted its second request for an OIG advisory opinion confirming the legality of its PAPs.

34. On October 30, 2018, OIG sent NORD a letter stating that "we have determined that we are not able to issue an advisory opinion in the above-named matter because 'the same, or substantially the same, course of action is under investigation, or is or has been the subject of a proceeding involving [HHS] or another government agency.' 42 C.F.R. § 1008.15(c)(2)."

35. On December 7, 2018, in response to OIG's denial letter, NORD wrote to OIG and asked that it reconsider its decision. OIG replied on December 20, 2018, again stating that "we have determined that we are not able to issue an advisory opinion in the above-named matter because 'the same, or substantially the same, course of action is under investigation, or is or has been the subject of a proceeding involving [HHS] or another government agency.' 42 C.F.R. § 1008.15(c)(2)."

36. On March 11, 2019, NORD again requested reconsideration of OIG's denial of its request for an advisory opinion. In this reconsideration request, NORD noted that OIG has a mandatory statutory duty to issue advisory opinions regarding specified topics upon request, and that it therefore "does not have authority to decline to act on NORD's request for an advisory opinion." NORD added that, "even if the OIG has discretion to deny issuance of an advisory opinion on the grounds that the same, or substantially the same, course of action is under investigation, NORD's actions are not under investigation insofar as we can determine."

37. On April 4, 2019, OIG again wrote to NORD that it was not able to issue an advisory opinion in light of the regulatory exclusion for matters under investigation. OIG added

that, "[n]otwithstanding your understanding that NORD's actions are not under investigation, we are aware of three subpoenas NORD has received from the Department of Justice relating to NORD's operation of its patient assistance program[s]."

38.  On July 1, 2021, NORD submitted its third request to OIG for an advisory opinion confirming the legality of its PAPs. In this request, NORD noted that OIG's prior denial had been based on the three subpoenas issued to NORD in 2016 and 2017, but that NORD had responded to those subpoenas and had recently been informed by the Department of Justice attorney in charge of the investigation that he was unaware of any future investigatory activity pertaining to NORD.

39.  On July 13, 2021, OIG sent NORD a letter stating that, "[p]ursuant to 42 C.F.R. § 1008.15(c)(2), we have determined that we cannot issue an advisory opinion in response to your request because '[t]he same, or substantially the same, course of action is under investigation, or has been the subject of a proceeding involving [HHS] or another governmental agency.'" Beyond the citation to its regulation, OIG provided no explanation or justification for refusing to provide an advisory opinion in response to NORD's request.

40.  On July 16, 2021, counsel for NORD spoke by phone with counsel for OIG regarding OIG's denial letter of July 13, 2021. On the call, counsel for OIG stated that OIG was not aware of NORD being the target of any enforcement activity. Nonetheless, counsel for OIG indicated that OIG was not willing to reconsider its denial.

41.  OIG's refusal to issue NORD an advisory opinion has had a substantial impact on NORD's ability to operate its PAPs and to provide financial assistance to patients. Many donors have become increasingly hesitant to contribute to independent charity PAPs as a result of the investigation by the Massachusetts U.S. Attorney's Office. Several of NORD's prospective and existing donors have stated that they will donate to NORD's PAPs or will renew their existing

donations only if NORD obtains a favorable advisory opinion from OIG. As a result of OIG not having issued NORD an advisory opinion, over the last five years, NORD has lost substantial financial support for its PAPs that would have helped thousands of financially needy patients obtain access to critical treatments for their rare diseases.

## COUNT 1: AGENCY ACTION CONTRARY TO LAW

42. Plaintiff incorporates by reference paragraphs 1 through 41.

43. The APA requires this Court to hold unlawful and set aside agency action that is not in accordance with law. 5 U.S.C. § 706(2).

44. OIG's refusal to issue an advisory opinion in response to NORD's 2021 request was inconsistent with 42 U.S.C. § 1320a-7d(b). Under that statute, "[t]he Secretary shall issue advisory opinions as to . . . [w]hat constitutes prohibited remuneration within the meaning of section 1320a-7b(b) of this title or section 1320a-7a(i)(6) of this title," and "whether any activity or proposed activity constitutes grounds for the imposition of a sanction under section 1320a-7, 1320a-7a, or 1320a-7b of this title." 42 U.S.C. § 1320a-7d(b)(2)(A), (E). The statute also provides that "the Secretary shall be required to issue to a party requesting an advisory opinion by not later than 60 days after the request is received." *Id.* § 1320a-7d(b)(5)(B)(i).

45. OIG's refusal to issue an advisory opinion to NORD was not in accordance with these statutory mandates and should be held unlawful and set aside.

46. OIG's regulation providing that it will not issue an advisory opinion when "[t]he same, or substantially the same, course of action is under investigation," 42 C.F.R. § 1008.15(c)(2), is inconsistent with OIG's statutory duty to issue advisory opinions regarding certain subject areas when requested to do so. For that reason, the regulation was not a valid basis for OIG to refuse to issue an advisory opinion in response to NORD's 2021 request.

12

## COUNT 2: AGENCY ACTION UNLAWFULLY WITHHELD

47. Plaintiff incorporates by reference paragraphs 1 through 41.

48. The APA requires this Court to "compel agency action unlawfully withheld." 5 U.S.C. § 706(1).

49. In refusing to issue an advisory opinion in response to NORD's 2021 request, OIG unlawfully withheld agency action in violation of OIG's concrete, mandatory statutory duties. *See* 42 U.S.C. § 1320a-7d(b)(2), (b)(5)(B)(i). OIG should be compelled to issue an advisory opinion in response to NORD's 2021 request.

## COUNT 3: ARBITRARY AND CAPRICIOUS AGENCY ACTION

50. Plaintiff incorporates by reference paragraphs 1 through 41.

51. The APA requires this Court to hold unlawful and set aside agency action that is arbitration or capricious. 5 U.S.C. § 706(2).

52. Over the course of 10 years, OIG three times has refused to issue NORD an advisory opinion regarding the legality of its PAPs, each time citing OIG's regulatory exclusion for matters that are under investigation. In response to NORD's most recent request in 2021, OIG again relied on its regulatory exclusion for matters that are under investigation, even while expressly acknowledging that OIG is not aware of NORD itself being under investigation.

53. Since it is not aware of NORD being under investigation, OIG has no reasonable or legitimate basis for refusing to provide NORD with advice on whether its PAPs are in compliance with the law.

54. OIG's 10-year refusal to issue an advisory opinion to NORD, and in particular OIG's 2021 refusal despite acknowledging that it is unaware of NORD being under investigation,

is an arbitrary and capricious exercise of OIG's authority and should be held unlawful and set aside.

## PRAYER FOR RELIEF

WHEREFORE, NORD respectfully requests that this Court issue judgment in its favor and against Defendants:

A. Declaring that OIG's refusal to issue an advisory opinion in response to NORD's 2021 request was unlawful, in that it violated OIG's statutory duties under 42 U.S.C. § 1320a-7d(b);

B. Declaring that OIG's refusal to issue an advisory opinion in response to NORD's 2021 request was arbitrary and capricious in violation of the APA;

C. Ordering OIG to accept NORD's 2021 advisory opinion request and issue an advisory opinion that responds to the request within 60 days;

D. Granting such other relief to which NORD may be entitled at law or in equity.

Dated: November 8, 2021

Respectfully submitted,

*/s/ William B. Schultz*
William B. Schultz (DC Bar No. 218990)
Ezra B. Marcus (DC Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
emarcus@zuckerman.com

Attorneys for National Organization for Rare Disorders